Benjamin K. Lusty-#12159
Cami R. Schiel-#16941
**RENCHER|ANJEWIERDEN**
460 South 400 East
Salt Lake City, Utah 84111
Telephone: (801) 961-1300
Facsimile: (801) 961-1311
ben@lawfirmra.com
cami@lawfirmra.com

*Attorney for the Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| **NAOMI KEHL** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) **MOTION TO DISMISS AND**<br>) **SUPPORTIVE MEMORANDUM** |
| **TONY LEBLANC and**<br>**WESTMINSTER COLLEGE,** | )<br>)<br>) Hon. David Barlow |
| **Defendants,** | )<br>) Civil Action No.: 2:23-cv-00167--<br>) DBB<br>)<br>) |

Defendants Tony LeBlanc ("LeBlanc") and Westminster College ("Westminster", collectively "Defendants"), by and through undersigned counsel, hereby file their Rule 12(b)(6) Motion to Dismiss the Complaint filed by Naomi Kehl ("Plaintiff").

///

1

**GROUNDS FOR RELIEF SOUGHT**

Defendants request the Court dismiss the Plaintiff's claims on the grounds that the Complaint fails to state claims for which relief can be granted. Title IX claims cannot be brought against individuals, so all Title IX claims against Mr. LeBlanc should be dismissed. The Title IX claim against Westminster should similarly be dismissed because Plaintiff does not allege sufficient facts to demonstrate deliberate indifference under *Twombly* and *Iqbal*. The Court should likewise dismiss Plaintiff's state law claims for lack of federal question jurisdiction upon granting this motion.

**RELEVANT FACTS**

The following facts are taken from Plaintiff's Complaint, and are offered for the purpose of this motion only, with the express reservation that Defendants may challenge their truthfulness at any point in this case:

*Parties, and overview of asserted counts*

1. Plaintiff was a freshman student and goalkeeper on Westminster women's soccer team during the 2020—2021 school year. *See* Complaint, DKT 5 at ¶ 25.

2. Tony LeBlanc is an employee of Westminster and is the head coach of Westminster's women's soccer team. *Id.* at ¶ 33.

3. Plaintiff's Complaint alleges Title IX claims of sex-based discrimination (Count I) and retaliation (Count II), as well as violations of 34 CFR § 106.41 (Count IV) against LeBlanc. *See generally,* Complaint.

4. Plaintiff's Complaint alleges Title IX claims of deliberate indifference (Count III) against Westminster. *Id.* at 27.

5. Plaintiff alleges state claims of gross negligence (Count V) and intentional infliction of emotional distress (Count VII) against Mr. LeBlanc *See* Complaint at 31, 36.

6. Plaintiff alleges state claims of gross negligence (Count VI), intentional infliction of emotional distress (Count VIII), and negligence under respondeat superior (Count IX) against Westminster. *Id.*

*The "hot seat" incident*

7. On or about April 9, 2021, the college women's soccer team was travelling by bus to an out of state soccer match. *Id.* at ¶48. Plaintiff was then a freshman at Westminster, and a member of the women's soccer team, playing goalkeeper. *Id.* at ¶47.

8. During the bus ride, Plaintiff alleges that she was made to sit on the "hot seat," a seat near the front of the bus. *Id.* at ¶42-43. This was at the suggestion and instance of her fellow teammates and fellow students. *Id.* Once seated, a spotlight was shown on Plaintiff, and she was asked a series of questions by other players on the team. *Id.* at ¶44-45, 48. These questions were, allegedly, sexual in nature.[1] *Id.* Although she alleges that LeBlanc was aware of this questioning, the complaint does not allege that he asked any questions directly or insisted that Plaintiff participate. *Id.*

9. Plaintiff did not want to participate, felt uncomfortable and distraught, but nevertheless participated in the "hot seat" game. *Id.* at ¶52.

*Plaintiff's father reports the incident; Westminster investigates*

10. More than five months later, on September 13, 2021 and September 16, 2021, Plaintiff's father, Ed Kehl, notified Westminster's Title IX office of the "hot seat incident" through informal conversations with senior Westminster officials. *Id.* at ¶¶58-66. On September 17, Ed Kehl attempted to file a formal Title IX complaint with Westminster but was unsuccessful in submitting the report through the college's online filing portal. *Id.*

---

[1] In the event Defendants are required to answer the complaint, they will deny this allegation.

11. Ed Kehl then emailed the complaint the following day. Rather than treat the complaint as a Title IX complaint, Westminster decided to investigate the issues raised therein as a "personnel matter". *Id.* at ¶¶70-73. Westminster did this because the complaint was not submitted by a student at the college, but instead by a student's parent. *Id.*[2]

12. Following receipt of the complaint, Westminster retained outside counsel, specifically attorney Lauren Shurman of the law firm of Stoel Rives to investigate the complaint and the allegations raised therein. *Id.* at ¶¶82-83. Ms. Shurman interviewed Plaintiff, as well as other members of the women's soccer team, but did not interview some former players, or indeed all the current players on the team. *Id.* at ¶¶84-86.

13. During the investigation, Westminster placed LeBlanc on administrative leave for a short period of time, causing him to miss one game on September 23, 2021. *Id.* at ¶¶88-89.[3]

14. Thereafter, Westminster concluded its investigation and determined that it would require student athletes and coaching staff of the women's soccer team to attend a Title IX training session. *Id.* at ¶¶90-92. No other disciplinary or remedial actions occurred, as per Plaintiff's complaint.

*LeBlanc benches Plaintiff*

15. Following the Title IX training session, Plaintiff did not play any minutes for the next four matches, beginning on October 1, 2021, and continuing through October 10, 2021. *Id.* at ¶100. On October 7, 2021, Ed Kehl submitted a second complaint to the College's Title IX Office alleging retaliation against Plaintiff. *Id.*[4]

---

[2] If this motion is denied, Westminster College will assert that its actions were consistent with the requirements of applicable federal regulations, and thus do not reflect neglect, ineptitude, or indifference.

[3] If the motion is denied, LeBlanc will assert that he missed two games.

[4] Although the complaint alleges that LeBlanc was responsible for benching Plaintiff, he will deny this allegation if required to answer the complaint. Goalkeeping decisions are generally

4

16. Thereafter, she played a few more minutes, but declined to pursue further retaliation claims or further Title IX claims. *Id.* at ¶117.

17. Notably, at no point did Plaintiff herself ever report conduct allegedly violating Title IX, nor ever file any complaints with Westminster herself regarding her treatment. See DKT 5 generally.

## **LEGAL STANDARD FOR A MOTION TO DISMISS**

Federal Rule of Civil Procedure 12(b)(6) enables the Court to dismiss any claim which "fail[s] to state a claim upon which relief can be granted." When considering a motion to dismiss, the Court views the complaint in a light most favorable to the plaintiff. See *Moore v. Guthrie*, 438 F.3d 1039 (10th Cir. 2006). Nevertheless, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). Further, a complaint must allege "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and it must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *Sutton v. Utah State Sch. For the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

In determining the adequacy of a targeted complaint, the court should engage in a two-part process. First, the court should begin by identifying allegations that, because they "are no

---

made by a separate goalkeeping coach. Further, Plaintiff was a freshman goalkeeper, and the college had a senior goalkeeper who was preferred on athletic merit alone.

more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Next, after excluding conclusory assertions, the court then assumes the veracity of well-pleaded allegations and determines whether they plausibly give rise to an entitlement to relief. *Id.*

## **LEGAL ARGUMENT**

### *I.     The Court should dismiss Counts I, II, and IV against LeBlanc because Title IX claims are only cognizable against institutions and not individuals*

Plaintiff's Counts I, II, and IV assert liability based upon violation of Title IX (20 U.S.C. §1681 *et. seq.*) against Mr. LeBlanc, on the basis that he supposedly failed to intervene against the "hot seat" incident and then allegedly retaliated against Plaintiff for reporting the "hot seat" incident. See DKT 5 at ¶¶ 118-145, 160-164. These claims, however, are not legally cognizable because Title IX does not extend liability to individuals, only institutions. Both the text of Title IX and binding precedent indicate that these claims against Mr. LeBlanc cannot proceed. Consequently, Plaintiff has failed to state facially plausible claims against LeBlanc and the Court should therefore dismiss them with prejudice.

The plain language of Title IX demonstrates that it is concerned with the conduct of institutions, not individuals. Indeed, "Title IX reaches institutions and programs that receive federal funds, which may include nonpublic institutions, but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009) (internal citations omitted). The operative language provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial

assistance…" 20 U.S.C. §1681(a). "It would be counterintuitive to classify a person in his or her individual capacity as a 'program' or 'activity'" for purposes of Title IX liability. *Tucker v. Univ. of N.M. Bd.*, 2022 U.S. Dist. LEXIS 136940, *18 (D. N.M. 2022). Other circuit courts have found that Title IX liability does not run to individuals. See, e.g., *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 199) ("Individual school officials, such as Parnell, may not be held liable under Title IX"); *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007) ("However, because Title IX only prohibits discrimination by federal grant recipients, a supervisory school official may not be sued in his individual capacity…"); *Smith v. Metropolitan Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1018-1020 (7th Cir. 1997) (collecting cases, analyzing statutes, and concluding Title IX only applies to federal recipients and individuals are not federal recipients); *Bose v. Bea*, 947 F.3d 983, 989 (6th Cir. 2020) ("But there is no individual liability under Title IX…").

Here, Plaintiffs alleges three counts against LeBlanc (I, II, and IV). Counts I and IV, however, are essentially identical in that they allege that LeBlanc violated Title IX by failing to intervene during the "hot seat" episode, with the exception that Count IV references a Department of Education regulation specific to athletics. The weight of authority, however, makes clear that Title IX claims are not legally cognizable against individuals. As the Supreme Court has noted, "Title IX reaches institutions and programs," but not "school officials, teachers, and other individuals." *Fitzgerald* at 257. Even if the "hot seat" episode constituted an actionable Title IX violation against Westminster (which Defendants deny), it cannot support such a claim against LeBlanc. Accordingly, the Court should dismiss Counts I and IV with prejudice.

Regarding Count II, Plaintiff alleges that LeBlanc retaliated against her after her father pressed a Title IX complaint by benching her from soccer competition. In *Bose v. Bea*, the 6th Circuit evaluated whether an individual could be liable for Title IX liability under a retaliation theory, such as alleged by Plaintiff. *Bose* concluded, however, that because "there is no

individual liability under Title IX, so [the plaintiff] cannot use Title IX to sue [the individual defendant] directly for his alleged retaliatory act." *Id.* at 989. Consequently, this Court should dismiss Plaintiff's claim for retaliation (asserted in Count II) with prejudice.

Plaintiff's Count IX alleges liability under respondeat superior against Westminster College. This allegation, however, is insufficient to extend her putative retaliation claim against LeBlanc to Westminster College. Plaintiff's complaint alleges that LeBlanc was responsible for all decisions to bench her (which he will deny). Consequently, there is no connection between his conduct and Westminster's conduct on this score. Further, *Bose* specifically rejected the use of respondeat superior in the manner alleged in Plaintiff's complaint: "the cat's paw theory, which imputes the discriminatory animus of another to the funding recipient, is inconsistent with Title IX principles requiring that a funding recipient be held liability only for its own misconduct." *Id.* at 994. *Bose* relied on the ruling in *Gebser* that "Title IX imposed liability only for a funding recipient's 'own official decision[s]" and not 'for its employees' independent actions.'" *Id.* At 990. In other words, because there are no allegations that Westminster College directed the alleged retaliation in this case (benching Plaintiff following the complaint), and only LeBlanc is implicated in that decision, Westminster College cannot be liable under Count II.

In summary, Plaintiff's allegations of individual liability against LeBlanc are legally untenable and she has failed to plead facts upon which relief can be granted. LeBlanc cannot bear individual liability under Title IX. Consequently, the district court should dismiss Counts I, II, and IV against him with prejudice.

## II. The Court should dismiss Plaintiff's retaliation claims because she never engaged in protected activity

Plaintiff alleges that she was unlawfully retaliated against. The gravamen of this claim is that after her father reported the "hot seat" incident to Westminster, LeBlanc unlawfully benched

her. As stated above, LeBlanc cannot bear liability under Title IX and thus her retaliation complaint should be dismissed. Nevertheless, the Court should also dismiss Plaintiff's retaliation claim because she cannot show that she engaged in protected activity (even if she could show retaliatory motive, which Defendants will deny if they are required to answer the complaint). Accordingly, this Court should dismiss her retaliation claims with prejudice.

Title IX protects from retaliation those individuals who report incidents of discrimination. See generally *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 180-81 (2005). To make a claim for retaliation, a plaintiff must show 1) she engaged in protected opposition to discrimination; 2) a reasonable person would have found the challenged action materially adverse; and 3) a causal connection existed between the protected activity and the adverse action. *Roberts v. Colo State Bd. Of Agric.*, 998 F.2d 824, 832 (10th Cir. 1993) (adopting Title VII retaliation jurisprudential standards for Title IX). See also *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1336 (D. Kan. 2008).

Necessary to Plaintiff's retaliation claim is that she makes the report of discrimination. *Roberts* at 832. The alleged facts, however, indicate that her father reported the claimed discrimination to Westminster, not her. Plaintiff cannot therefore meet her *prima facie* burden to demonstrate a plausible claim. "If a plaintiff is unable to make out a prima facie case, judgment as a matter of law is appropriate." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007). Accordingly, the Court should dismiss with prejudice Plaintiff's claims for retaliation.

### III. The Court should dismiss Plaintiff's Count III deliberate indifference claim against Westminster College because it is legally insufficient to assert Title IX liability

Plaintiff's Count III alleges deliberate indifference against Westminster College based upon her supposition that it negligently or incompetently responded to her complaint of

discrimination by treating it as a "personnel matter" rather than an official Title IX investigation, providing insufficient discipline against LeBlanc, and taking insufficient corrective action. Indeed, Plaintiff acknowledges that Westminster College responded to her investigation, but alleges that:

- Westminster chose to handle the complaint as a personnel matter rather than a Title IX complaint, DKT 5 at ¶71-75;
- Westminster failed to advise Plaintiff's father that his complaint would not be treated as a Title IX investigation because it was not submitted by Plaintiff; *Id.* ¶75-77;
- An outside investigator hired by Westminster College interviewed the members of the team who were present at the "hot seat" event, but did not interview team members who may have experienced similar situations in prior years, *Id.* at ¶¶82-86
- Westminster College placed LeBlanc on a short-term administrative leave, but failed to take further punitive actions against him; *Id.* at ¶88;
- After the complaint, Westminster College conducted a Title IX training event, but it consisted of a single meeting lasting around an hour which "emphasized that the College took Title IX complaints very seriously." *Id.* at ¶¶94-95.

Plaintiff's Count III alleges deliberate indifference on the part of Westminster College, alleging that it was "minimalist and unreasonable" in its response to Plaintiff's complaint of discrimination. *Id.* at ¶153. This, they incorrectly allege, amounted to a pattern of discriminatory behavior. The facts as pled, however, demonstrate that Westminster College was not deliberately indifferent to Plaintiff's claim of sexual harassment; indeed, Plaintiff's complaint makes clear that Westminster College responded to her claims, investigated them, and took corrective action. Although she may disagree with Westminster's actions, she cannot make a facially plausible

claim for actionable deliberate indifference under Title IX based upon her complaint. This Court, accordingly, should dismiss Count III with prejudice.

Title IX may be enforced through civil damages suits, but civil liability arises "only when the recipient of federal funds has actual notice of the alleged discrimination and responds with deliberate indifference to that determination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S., 290-91 (1998). *Gebser* was clear that Title IX is not premised upon respondeat superior liability, and established deliberate indifference as a distinct theory of liability:

> We think, moreover, that the response must amount to deliberate indifference to discrimination. The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation. That framework finds a rough parallel in the standard of deliberate indifference. Under a lower standard, there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions. *Id.*

The standard of deliberate indifference applies whether the harassment is teacher-on-student (*Gebser*) or student-on-student. *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 641 (1999). To prevail on a claim of deliberate indifference under Title IX, a plaintiff must show 1) the school remains deliberately indifferent to acts of harassment of which it has actual knowledge; 2) the harassment was reported to an appropriate person with the authority to take corrective action to end the discrimination; and 3) the harassment was so severe, pervasive and objectively offensive that it deprived the victim of access to the educational benefits or opportunities provided by the school. *Escue v. N. Okla. College*, 450 F.3d 1146, 1152 (10th Cir. 2006).

Notwithstanding, deliberate indifference is a high bar for a plaintiff to clear. "A district is deliberately indifferent to acts of student-on-student harassment only where the response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Rost v.*

*Steamboat Sprints RE-2 Sch. Dist.*, 511 F.3d 1114, 1121 (10th Cir. 2008). Further, negligent or inept responses to reports of harassment do not amount to deliberate indifference. *Id.* at 1121 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007) ("in hindsight, there may have been other and better avenues that the district could have explored, but Title IX does not require flawless investigations or perfect solutions"). Under the deliberate indifference standard, a plaintiff cannot succeed upon a "showing of simple or even heightened negligence." *Bd. Of the Cnt. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

As to remedial measures, schools do not need to expel every student accused of sexual harassment, and victims of peer harassment do not have a Title IX right to make particular remedial demands. *Rost* at 1123. Indeed, Schools are not required to "remedy" peer harassment, but "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* Finally, Title IX does not require "flawless investigations or perfect solutions" (*Rost* at 1123) and under the deliberate indifference standard, courts should not second guess school disciplinary decisions. *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629, 648 (1999) ("school administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable).

Considering these authorities, Plaintiff cannot demonstrate a facially plausible claim of deliberate indifference by Westminster College. Taking all inferences in her favor, she essentially complains that 1) Westminster failed to adequately investigate her claim; 2) its discipline of LeBlanc was insufficient; and 3) its remedial actions were insufficient. These, however, do not rise to the level of deliberate indifference. Even assuming Westminster

"blundered" in its investigation by failing to conduct interviews, and incorrectly deeming the issue a "personnel matter" (which it denies), this does not constitute deliberate indifference. Negligent, even heightened negligent, investigations do not constitute deliberate indifference. See *Davis, supra*. Failing to interview key witnesses does not constitute negligent indifference. See *Rost, supra*. And failing to implement a complainant's preferred remedies does not rise to the level of deliberate indifference. *Id.*

Indeed, the facts as pled demonstrate that Westminster considered Plaintiff's complaint of harassment, hired an outside investigator, suspended LeBlanc, and implemented mandatory Title IX training for the women's soccer team. Plaintiff alleges no subsquent acts of harassment against her. Consequently, she cannot succeed in her claim that Westminster College was deliberately indifferent to her. She may not like the outcome reached, but her Complaint fails to assert deliberate indifference. This Court should accordingly dismiss her Count III.

### IV. Plaintiff has failed to plead severe and pervasive discrimination or hostility

Finally, Plaintiff has not pled that the "hot seat" incident, and Westminster's supposed indifference to the same, was so severe and pervasive as to deny her access to educational opportunities. To show actionable harassment under Title IX, a plaintiff must show that sex-based harassment by fellow students must be "so severe, pervasive, and objectively offense" that it "undermines and detracts from the victims' education experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis* at 651. See also *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1311 (10th Cir. 2020).

There are no allegations in the complaint that Plaintiff suffered any loss of educational opportunity due to the "hot seat" incident. True, she alleges that she lost playing time after her complaint was reported, but she does not allege that the "hot seat" incident led to any adverse consequences for her other than temporary feelings of discomfort and anxiety. Notably absent

13

are any allegations that she was deterred from participating in the soccer team because of the "hot seat." Indeed, five months elapsed between the "hot seat" and her father's report of it to Westminster, during which her complaint alleges no harm to her whatever. This stands in contrast to cases such as *Doe*, in which the complaint alleged continuous peer-on-peer harassment requiring the student to withdraw from attending classes for a year, and during which she was subject to ongoing and offensive statements. *Id.* at 1311-1312.

As a result, this single incident of allegedly harassing behavior, although unpleasant for her, did not constitute severe or pervasive harassment sufficient to deprive her of educational opportunities.[5] By the language of her own complaint, she continued her tenure on the team and her educational career at Westminster without further upset. The "hot seat" thus cannot rise to the level of a plausible claim.

## V.     *The Court should dismiss Plaintiff's state-law claims*

Plaintiff's remaining claims (Counts V, VI, VII, and VIII) are state-law claims asserting negligence and intentional infliction of emotional distress. Plaintiff asserts jurisdiction in this court based upon theories of supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). However, because this motion is dispositive of all federal claims, and because the Court should dismiss all federal claims, it should decline to exercise jurisdiction over Plaintiff's pendant state law claims and dismiss them as well. *McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006).

## **CONCLUSION**

Plaintiff has failed to assert facts which could plausibly support an inference of liability against LeBlanc and Westminster for Title IX violations. As shown herein, courts evaluating Title IX cases have overwhelmingly concluded that it does not afford a right of action against

---

[5] Again, in the event Defendants are required to answer the complaint, they will deny this allegation.

individuals. Consequently, this Court should dismiss all federal claims against LeBlanc. As to Westminster, the alleged facts in the complaint make plain that it did not respond to Plaintiff's situation with deliberate indifference; to the contrary, it retained outside counsel to investigate, suspended LeBlanc, and implemented mandatory Title IX training. Even if this response was negligent or inept (which Westminster denies), it cannot be deliberately indifferent.

The asserted facts, moreover, fail to show that Plaintiff suffered any deprivation of educational opportunities, or that the "hot seat" incident was anything more than a short and temporary moment of unpleasantness for her. Indeed, at no point did Plaintiff herself complain to Westminster. She has thus failed to plead facts which could support a claim for relief under Title IX.

The Court should dismiss the remaining state law claims for lack of jurisdiction. After all federal matters are resolved, this Court should defer any evaluation of claims based upon Utah state law which are not tied to a viable federal cause of action to the Utah state courts to resolve. Accordingly, Defendants pray that this Court dismiss Plaintiff's complaint, in its entirety, and on the merits with respect to all asserted federal claims.

DATED this 30th day of May 2023.

**RENCHER ANJEWIERDEN**

/s/ Benjamin K. Lusty

Benjamin K. Lusty
Cami R. Schiel

## MAILING CERTIFICATE

    I hereby certify that on the 30th day of May 2023, I caused a true and accurate copy of the foregoing to be served via the Court's electronic filing system, and via email to the following:

| | |
|---|---|
| Samuel Rocereta<br>srocereta@lentolawgroup.com<br>Lento Law Group, P.C.<br>2150 South 1300 East, Suite 500<br>Salt Lake City, UT 84106<br>385.479.3200<br><br>Joseph Cannizzo, Jr.<br>jcannizzo@lentolawgroup.com<br>Lento Law Group, P.C.<br>1 Chase Corporate Center, Suite 400<br>Birmingham, AL 35244<br>385.485.0600 | |

                                          /s/ Jane Ratcliffe
                                      RENCHER|ANJEWIERDEN

.